Nettie **PENDLETON**, Plaintiff,

v.

**AMERICAN TITLE BROKERS, INC.**, Defendant.

**Civ. A. No. 89–0904–RV–C.**

United States District Court, S.D. Alabama, S.D.

Jan. 9, 1991.

Peter J. Madden, Mobile, Ala., for plaintiff.

James A. Johnston, Pensacola, Fla., for defendant.

## ORDER

VOLLMER, District Judge.

This cause is before this Court pursuant to the Motion for Partial Summary Judgment (Tab # 11), filed by the defendant, and the Motion for Summary Judgment (Tab # 13), filed by the plaintiff. This Court has reviewed all pertinent materials in the file. This Court concludes that the defendant's Motion for Partial Summary Judgment is due to be, and hereby is, DENIED. The Motion for Summary Judgment filed by the plaintiff is GRANTED.

### FINDINGS OF FACT

1. Plaintiff is a resident of Mobile County, Alabama, and a consumer as that term is defined in 15 U.S.C. § 1602(h).

2. The defendant is a Florida corporation doing business at 166 Broad Street, Mobile, Alabama and is a creditor as that term is defined in 15 U.S.C. § 1602(f).

3. In November, 1988, the plaintiff read an advertisement in the Mobile Press Register which stated: "Pawn your title, keep your car." On November 18, 1988, the plaintiff entered into a contract with the defendant whereby she received ONE HUNDRED ($100.00) DOLLARS from the

defendant by pledging the title to her 1983 Buick Century automobile as collateral.

4. Plaintiff signed a document provided to her by the defendant entitled "Pawn ticket/loan." The "Pawn ticket/loan" document reflects on its face that the plaintiff was to repay $100.00, with a total interest of $3.50. Repayment was to be made in ten weekly installments.

5. At the same time the plaintiff pledged her automobile to the defendant, she entered into an agreement to lease her automobile back from the defendant for the ten week loan repayment period at a weekly rate of $10.00. The amount of the weekly lease payment was ten percent (10%) of the amount borrowed. The plaintiff also signed a "right of repossession" permitting the defendant to repossess the leased vehicle in the event of default.

6. Plaintiff elected to take out credit insurance. The defendant provided a form for that purpose. The form was not signed and the cost of the insurance was not disclosed on the document. A chart in the defendant's office disclosed that the credit insurance rate was forty-three cents per week.

7. There is no dispute that the interest rate on the loan was not expressed in any document, either in terms of an annual percentage rate or otherwise. Nor was the total of the payments (the amount of money that the debtor would be required to pay to the creditor over the term of the loan) disclosed.

8. The defendant assessed a $15.00 "processing fee" in connection with the loan but such fee was not disclosed. The processing fee was to be paid at the rate of $1.50 per week over the ten-week period.

9. Had the $100.00 loan and accompanying lease been paid out over the ten-week term, the weekly payments would have been $22.88; broken down as follows:

$ 10.00 — lease
   .60 — sales tax on lease
 10.00 — principal of loan
   .35 — interest
 1.50 — processing fee
   .43 — credit insurance

$ 22.88   Total

10. However, plaintiff paid the amount off in two weeks by paying the defendant $137.67 as follows:

$ 100.00 — principal
    .86 — credit disability insurance
    .70 — interest
 20.00 — lease charge
 15.00 — title fee
  1.20 — sales tax

$ 137.76   Total

11. On December 2, 1988, plaintiff received Four Hundred ($400.00) Dollars from the defendant, (at the same time she paid off the balance of the first loan). The documentation of the loan and lease were the same as those involved in the November 18th transaction.

12. Under the terms of the agreement, the plaintiff was to repay the $400.00 received from the defendant with interest of $14.00 over ten weeks. In addition, the loan carried credit insurance at $1.70 per week, a processing fee of $1.50 per week, and sales tax on the lease of $2.40 per week. The lease payment was $40.00, matching the $40.00 weekly payment on principal.

13. Plaintiff's vehicle was repossessed by the defendant.

14. On March 4, 1989, the plaintiff paid the amount owing on the loan and lease, including interest, finance charges, and a repossession fee. The amount of money paid by the plaintiff to the defendant in connection with the December 2, 1988 transaction totalled $1,072.00, broken down as follows:

$ 400.00 — principal
 20.40 — credit disability insurance
 15.40 — interest
467.40 — lease payments
 15.00 — processing fee
 28.80 — sales tax
125.00 — repossession fee

$1,072.00   Total

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over Counts I and II of the complaint pursuant

to 28 U.S.C. § 1331. This Court has pendent jurisdiction over Counts III and IV.

2. Counts I and II allege that the defendant, American Title Brokers, Inc., violated 15 U.S.C. § 1601 et seq. by failing to disclose clearly, conspicuously, and together on a single document, the credit insurance, and the total of payments assessed in connection with the loan/lease agreements entered into between the parties on November 18, 1988, and December 1, 1988.

3. Counts III and IV allege that the defendant's "Pawn the Title and keep the car," scheme is not a bona fide pawnbroking activity, but rather is an attempt to evade the requirements of the Alabama Small Loan Act, Alabama Code § 5–18–1, et seq., which requires a license which the defendant does not have.

### TRUTH IN LENDING ACT: COUNTS I and II

4. The Federal Reserve Board has been authorized by Congress to promulgate rules to effectuate the Truth in Lending Act. The rules and regulations promulgated by the Board are collectively known as "Regulation Z," 12 C.F.R. § 226.1 et seq. The plaintiff alleges that the loans by the defendant to the plaintiff violated the Truth in Lending Act, 15 U.S.C. § 1601, et seq. The Truth in Lending Act was enacted, "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him."

5. Regulation Z requires lenders to accurately disclose, *inter alia*, the amount financed, an itemization of the amount financed, the finance charge, the annual percentage rate of the loan, and the payment schedule. 12 C.F.R. § 226.17. "First, the disclosure must be made clearly and conspicuously, and second, the disclosures must be grouped together, segregated from everything else and not contain information not directly related to the required disclosures." *In re Cook*, 76 B.R. 661 (Bkrtcy.C.D.Ill.1987). The terms "amount financed," "finance charge," "annual percentage rate," a "total of payments" must appear on the disclosure document. 12

C.F.R. § 226.18(b), (d), (e), and (h). Further, the "finance charge" and "annual percentage rate" must be made "more conspicuous than any other disclosure." 12 C.F.R. § 226.17(a)(2).

6. This Court concludes that the documents provided by the defendant, to the plaintiff, in connection with the November 18, 1988, and December 2, 1988, loans, failed to contain the required disclosures. The defendant is liable to the plaintiff for the "finance charges" imposed in each transaction. Regulation Z, § 226.4(a) defines "finance charge" as:

> The cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit.

7. "Finance charges" include interest, transaction charges, and premiums for credit life and disability insurance. 12 C.F.R. §§ 226.4(b)(1), (b)(2) and (b)(7).

8. Plaintiff alleges that the weekly rental fees imposed in the two transactions constitute charges incident to the extension of credit, and that proper disclosure was required.

9. Plaintiff concedes that she was not required to lease back her car from the defendant as a condition of obtaining credit. Plaintiff alleges that the weekly rental fee was a charge imposed "incident" to the extension of the two loans.

10. Defendant's business slogan, as advertised, reads: "Pawn your title, keep your car." Ms. Platt, an employee of the defendant, stated in her deposition that she estimated that 90% of the customers of the defendant choose to keep their automobile. In this action the defendant did not retain possession of the plaintiff's automobile, instead the plaintiff had the defendant listed as a lienholder on the title and executed the loan and rental agreement simultaneously. Ms. Platt stated in her deposition that the loan, the lease payment, and the right of repossession were all part of one transaction.

11. The weekly rental rate is not determined by the value of the collateral or the cost incurred by the defendant. Rather, the weekly rental rate is determined by the amount of money the customer borrows. Ms. Platt stated in her deposition that the weekly lease payment is always 10% of the amount of the loan.

12. In this action the plaintiff borrowed $100.00 on November 18, 1988, and the weekly rental fee on that loan was $10.00. When the plaintiff borrowed $400.00 on December 2, 1988, the weekly rental fee on the loan was $40.00.

13. This Court concludes, based on the facts in this action, that the weekly rental charge is a charge imposed incident to the extension of credit and constitutes a finance charge. There is no dispute that the lease agreement did not conform with the disclosure requirements set forth in the Truth in Lending Act.

14. A single violation of the Truth in Lending Act is sufficient to affix liability and multiple violations in a single transaction do not impose additional liability. *Jackson v. Columbus Dodge, Inc.*, 676 F.2d 120 (11th Cir.1982). Plaintiff is entitled to recover both actual damages in the amount of "twice the amount of any finance charge in connection with the transaction." 15 U.S.C. § 1640(a)(2)(A)(i). The defendant's liability "shall not be less than $100.00 nor greater than $1,000.00" for each transaction. 15 U.S.C. §§ 1640(a)(2)(A)(i) and 1640(g).

15. This Court concludes and hereby orders that the plaintiff's Motion for Summary Judgment as to Counts I and II is due to be, and hereby is, GRANTED.

16. The plaintiff shall have and recover from the defendant the statutory minimum of $100.00 for the November 18, 1988 transaction. The statutory minimum is applicable since twice the $.86 credit disability insurance, $.76 interest charge, $20.00 lease payment, $15.00 title fee and $1.20 sales tax is less than $100.00. The plaintiff shall have and recover from the defendant the statutory maximum of $1,000.00 for the December 1988 transaction. The statutory maximum is applicable since twice the $20.40 insurance charge, $15.40 interest charge, $476.40 lease payment, and $15.00 processing fee exceed $1,000.00.

17. Plaintiff is also entitled to reasonable attorney's fees and costs under 15 U.S.C. § 1640. Plaintiff's attorney shall submit a proper motion and affidavit within ten (10) days of the date of this Order.

## COUNTS III AND IV THE PENDENT STATE LAW CLAIMS

18. Counts III and IV allege that the defendant's "Pawn the title and keep the car" scheme is not a bona fide pawnbroking activity, but rather is an attempt to evade the requirement of the Alabama Small Loan Act, Alabama Code § 5–18–1, et seq., which requires a license which the defendant does not have.

19. There is no dispute that the defendant engages in the business of lending amounts of less than $749.00, and that the defendant is not licensed by the State of Alabama to make small loans as required by the Alabama Small Loan Act, Alabama Code (1975) § 5–18–4. However, the defendant contends that it is exempt from the requirements of the Small Loan Act because it is a licensed pawnbroker. Defendant relies on Alabama Code § 5–18–4(b) which states: "This chapter shall not apply to any person doing business under the authority of, and as permitted by, any law of this state or of the United States relating to ... bona fide pawnbroking business."

20. A pawnbroker has been defined as follows:

A person whose business is to lend money, usually in small sums, on security of personal property deposited with him or left in pawn.

21. American Title Brokers, Inc., is engaged in the business of leasing automobiles back to their clients after obtaining a security interest in the vehicles. The defendant does not retain possession of the collateral as security for its loans but rather makes its money by renting its customers their own vehicles. The practice of leasing the automobile back to the client is contrary to the traditional practice of

pawnbroking in which the pawnbroker retains possession of the collateral.

22. This Court finds that the activity engaged in by the defendant is not a business of a bona fide pawnbroker. Accordingly, the defendant is not exempt from the Alabama Small Loan Act, Alabama Code § 5–18–4 (1975). This Court concludes and hereby orders that the Motion for Summary Judgment filed by the plaintiff as to Counts III and IV is GRANTED.

23. This Court concludes that the activity engaged in by the defendant was not a business of a bona fide pawnbroker and that the defendant was not licensed to make small loans at the time of the November 18, 1988, and December 2, 1988, transactions. Plaintiff shall have and recover $137.76 in connection with the November 18, 1988 transaction, and the plaintiff shall have and recover $1,072.00 in connection with the December 2, 1988 transaction.

### CONCLUSION

Nettie Pendleton, the plaintiff, shall have and recover from the defendant, American Title Brokers, Inc., $2,309.67 in satisfaction of all claims arising out of, or which could have arisen out of, this litigation.

| | |
|---|---|
| Count I | $ 100.00 |
| Count II | 1,000.00 |
| Count III | 137.76 |
| Count IV | 1,072.00 |
| Total | $2,309.76 |

Costs taxed to the defendant. Judgement will be entered by a separate document.