Barbara BARLOW, on behalf of herself
and all others similarly situated,
Plaintiff,

v.

Frank EVANS and Charlotte Evans,
d/b/a Quik Pawn Shop, and
EFS, Inc., Defendants.

No. Civ.A. 94–D–1319–N.

United States District Court,
M.D. Alabama,
Southern Division.

Aug. 4, 1997.

C. Knox McLaney, Montgomery, AL, J. Eric Vander Arena, Chicago, IL, Cathleen M. Combs, Chicago, IL, Lewis B. Hickman, Montgomery, AL, for Plaintiff.

Robert D. Segall, George W. Walker, III, Montgomery, AL, C. Michael McInnish, Montgomery, AL, A. William Loeffler, Alan E. Lubel, Scott, D. Riddle, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Pending before the court are defendants' motion for summary judgment and plaintiff's motion for partial summary judgment, filed

March 9, 1995, and May 22, 1995, respectively. These motions have been briefed in detail. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that defendants' motion is due to be granted in part and denied in part and that plaintiff's motion is due to be granted in part and denied in part.

## JURISDICTION

Based upon 28 U.S.C. §§ 1331 and 1367, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## FINDINGS OF FACT

Plaintiff Barbara Barlow ("Barlow") commenced this two-count action on September 14, 1994, in the Circuit Court for Montgomery County, bringing a claim for violation of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and a state law claim of fraudulent suppression of material information required by TILA.[1] This action arises from two pawn transactions occurring between plaintiff Barbara Barlow ("Barlow") and defendant Quik Pawn Shop ("Quik Pawn") in which Barlow pawned her VCR and the title to her automobile. She brings this action on behalf of herself and all others similarly situated.

Owned by defendant EFS, Inc. ("EFS"), Quik Pawn is a pawn shop business with at least nine locations in Alabama. Defendant Frank Evans is president of EFS, and defendant Charlotte Evans is its secretary. Although EFS conducts business as Quik Pawn, none of the advertisements or documents provided to Barlow indicated the existence of EFS or the relationship between EFS and Quik Pawn. Quik Pawn generally engages in two types of pawn transactions: (1) the customer presents his or her motor vehicle title to Quik Pawn in exchange for a sum of money and a pawn ticket or (2) the customer delivers personal property to Quik Pawn in exchange for a sum of money and a pawn ticket. On all pawn transactions, customers are required to pay an "interest charge" of 25% on the loan before they may redeem their property ("redemption charge") and a 25% monthly charge ("renewal charge") on the principal balance each time the pawn ticket redemption date is extended. The effective annual percentage rate on such transactions ranges between 240% and 300%.

On July 8, 1994, in need of money "for personal purposes," Barlow "pawned" the title to her 1985 Buick with defendant Quik Pawn at the Norman Bridge Road location in Montgomery, Alabama, for a "loan amount" of $500.00. Retaining possession of her automobile, Barlow received a pawn ticket for her automobile title, which stated in pertinent part:

> The pledgor may renew this pawn for an additional 30 days by paying $125.00, which is the monthly interest charge. The pledged goods shall be returned to the pledgor or an authorized representative upon payment of $625.00 due on or before 08/08/94. Early repayment does not entitle you to a refund of part of the interest. The monthly and annual interest rates are 251 and 300%.

> You may make weekly payments of $156.25 with a final payment of $156.25.

Accordingly, Barlow's redemption charge for her automobile title was $625.00, and each of her monthly renewal charges was $125.00. On August 8, 1994, again in need of money, Barlow "pawned" her VCR with Quik Pawn for a loan amount of $75.00. The pawn ticket for the VCR stated in part:

> The pledgor may renew this pawn for an additional 30 days by paying 15.00, which is the monthly interest charge. The pledged goods shall be returned to the pledgor or an authorized representative upon payment of $90.00 due on or before 09/08/94.... The monthly and annual interest rates are 20% and 240%.

Accordingly, Barlow's redemption charge for her VCR was $90.00, and her monthly renewal charges were $15.00.

Barlow contends that the pawn tickets do not provide certain credit disclosures as re-

---

1. Defendants timely removed this action to federal court, and plaintiff subsequently amended her complaint on October 17, 1994, and November 8, 1994.

quired by TILA and implemented by Federal Reserve Board Regulation Z. Specifically, Barlow argues that the Quik Pawn tickets do not properly disclose the *amount financed*, the *finance charge*, or the *annual percentage rate*, using those terms, nor do they contain a separate itemization of the amount financed, the number, amounts and timing of payments scheduled to repay the obligation or the *total of payments*, using that term, and described as "the amount you will have paid when you have made all scheduled payments."[2] In addition to claiming these nondisclosures violate TILA, Barlow also argues that defendants' failure to make the necessary disclosures constitutes fraudulent suppression. Finally, Barlow insists that she is entitled to actual damages, which includes the value of her pawned items forfeited for nonpayment of the pawn or interest charges.

Defendants contend that TILA requirements do not apply to pawn transactions in Alabama because they are not considered credit transactions. Alternatively, defendants argue that if TILA does apply to pawn transactions in Alabama, then the pawn tickets are in compliance with TILA's requirements. Additionally, defendants contend that individual defendants Frank and Charlotte Evans are not subject to liability under TILA. In response to Barlow's demand for actual damages, defendants insist that the actual damages provided for in 15 U.S.C. § 1640 do not include the value of non-redeemed property. Finally, with regard to Barlow's claim of fraudulent suppression, defendants contend that the suppression claim is pre-empted by TILA. Defendants also argue, alternatively, that even if the suppression claim is not pre-empted by TILA, Barlow cannot show that any material facts were suppressed or that defendants had any intent to deceive Barlow.

Defendants have moved for summary judgment on all claims. Barlow has moved for a partial summary judgment on the issue of liability for violation of TILA. She also seeks a summary judgment finding that the measure of actual damages under TILA includes the value of the pawned item forfeited for nonpayment of the pawn or interest charges.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affida-

---

**2.** The court uses italics throughout this Memorandum Opinion and Order to designate terms

which TILA and Regulation Z specifically require to be included in loan disclosures.

vits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita,* 475 U.S. at 587; *see also Anderson,* 477 U.S. at 249.

The court recognizes that TILA claims are often suitable for summary judgment. *Rodash v. AIB Mortgage Co.,* 16 F.3d 1142 (11th Cir.1994). In fact, cases analogous, if not identical, to this one have been resolved on summary judgment motions. *See Wiley v. Earl's Pawn & Jewelry, Inc.,* 950 F.Supp. 1108 (S.D.Ala.1997) (Butler, C.J.); *Hyde v. Hutto Enterprises, Inc.,* 1994 WL 653504 (M.D.Ala.1994) (DeMent, J.); *Dennis v. Handley,* 453 F.Supp. 833 (N.D.Ala.1978) (Guin, J.).

## DISCUSSION

### I. Truth in Lending Act Claim

#### A. Applicability of TILA to Pawn Transactions in Alabama

■ TILA was enacted to ensure meaningful disclosure of credit terms so that the customer can make intelligent and informed decisions among available credit term options. 15 U.S.C. § 1601(a); *see also Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 559, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980). But because credit transactions "defy exhaustive regulation by a single statute," Congress delegated "expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit." *Ford Motor,* 444 U.S. at 559–560 (citing *Mourning v. Family Publications Serv., Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973)); 15 U.S.C. § 1604. In response, the Board promulgated Regulation Z, 12 C.F.R. Part 226.1 *et seq. Ford Motor,* 444 U.S. at 560.

■ The defendants contend that pawn transactions carried out by entities organized under Alabama Code § 5–19A–6 (1996) are beyond the purview of TILA. Basically, defendants argue that they are not required to make TILA disclosures because, under Alabama law, they do not extend credit. The term "credit" is defined by TILA as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). TILA does not define the term "debt," but defendants argue that a debt must be accompanied by an obligation to repay and that without that obligation to repay, a credit situation does not arise. They argue that in the case of a pawn transaction in Alabama, there is no debt because, pursuant to the Alabama Pawnshop Act, § 5–19A–1, *et seq.,* Alabama Code (1996), the pledgor/consumer has no obligation to make any payment and the pawn broker is expressly prohibited from making or enforcing an agreement affixing personal liability on the part of the pledgor to repay any amount of money. Essentially, defendants argue that a pawn transaction is a "sale" rather than the extension of credit and, therefore, is not regulated by TILA.

■ Defendants' argument is at odds with the Federal Reserve Board's Official Staff Interpretations, which specifically state that pawn transactions are covered by TILA. 12 C.F.R. Part 226, Supp. I(C)(18). Addressing the issue of pawn transactions, the agency commentary provides that:

When, in connection with an extension of credit, a consumer pledges or sells an item to a pawnbroker creditor in return for a sum of money and retains the right to

redeem the item for a greater sum (the redemption price) within a specified period of time, disclosures are required.

*Id.* This court is bound to give great deference to the agency's interpretation of its own regulations and the Board's determination that pawn transactions are within the purview of TILA. The Supreme Court has instructed lower courts to be "attentive[ ] to the views of the administrative entity appointed to apply and enforce the statute" and that "deference is especially appropriate in the process of interpreting the Truth in Lending Act and Regulation Z." [3] *Ford Motor,* 444 U.S. at 565. Consequently, this court must defer to Federal Reserve Board staff opinions unless they are "demonstrably irrational." *Id.*

▪ Defendants have not made a showing that the interpretative commentary is irrational. Instead, defendants continue to deny that pawn transactions in Alabama are extensions of credit. In the alternative, they argue that compliance with the "new law" in the commentary update, which explicitly applies TILA to pawn transactions, did not become mandatory until October 1, 1996, and consequently, that TILA should not be applied to the pawn transactions in the instant action because they occurred prior to 1996.

The court finds the commentary to be applicable to the case at hand. In *Wiley v. Earl's Pawn & Jewelry,* the defendants also argued that the revised commentary was not applicable because it was enacted after the incidents made the basis of the claim. 950 F.Supp. at 1112. In response, the *Wiley* court pointed out that where "an agency rule ... clarifies an unsettled area of law [but] does not change the law ... it may be applied to claims arising before its effective date." *Id.* (citing *Pope v. Shalala,* 998 F.2d 473, 483 (7th Cir.1993); *Smith v. Highland Bank,* 915 F.Supp. 281, 286–87 (N.D.Ala.

1996) (applying clarifying amendment to Regulation Z Commentary enacted after claim arose), *aff'd* 108 F.3d 1325 (11th Cir. 1997)). The *Wiley* court also pointed out that "an agency's determination that an amendment clarifies, rather than changes, the law is given great deference." 950 F.Supp. at 1112 (citing *Wright v. Director, Fed. Emergency Management Agency,* 913 F.2d 1566, 1571 (11th Cir.1990)). The updated commentary at issue specifically states that it "applies and interprets the requirements of Regulation Z" and that these revisions are meant to "provide guidance" on issues therein. *See* 61 Fed.Reg. 14952 (Summary) (1996). This cautionary statement leads this court, like the *Wiley* court, to conclude that the updated commentary is meant to clarify rather than to change existing law concerning pawn transactions.

The court's conclusion that the updated commentary is meant to clarify existing law is given further support by the fact that courts addressing this issue prior to the updated commentary have uniformly concluded that pawn transactions are in fact covered by TILA. *See, e.g., Fryer v. Easy Money Title Pawn, Inc.,* 183 B.R. 322 (Bkrtcy.S.D.Ga. 1995) (finding pawn transaction constitutes an offer of credit and falls within TILA and Regulation Z); *Hyde,* 1994 WL 653504, at * 2 (concluding that holding Alabama pawnbrokers exempt from TILA "would be to withhold protection from an area where it is most sorely needed") (quoting *Dennis v. Handley,* 453 F.Supp. 833 (N.D.Ala.1978)); *Pendleton v. American Title Brokers, Inc.,* 754 F.Supp. 860 (S.D.Ala.1991) (applying TILA requirements to "Pawn the Title and keep the car" scheme without discussion).

Even without the Federal Reserve Board's guiding commentary concerning the scope of TILA, a determination that TILA covers

---

**3.** The Supreme Court offered several reasons why "traditional acquiescence [to] administrative expertise is particularly apt under TILA": (1) "the Federal Reserve Board has played a pivotal role in setting the statutory machinery in motion." (2) "Congress delegated broad administrative lawmaking power to the Federal Reserve Board when it framed TILA and the act is best construed by those who gave it substance in promulgating regulations thereunder"; (3) "Con-

gress has specifically designated the Federal Reserve Board and staff as the primary source for interpretation and application of truth-in-lending law"; and (4) the Federal Reserve Board is "better suited" than courts to strike the balance between "competing considerations of complete disclosure and the need to avoid informational overload." *Ford Motor,* 444 U.S. at 566 (internal quotations and citations omitted).

pawn transactions appears to be a logical, rational decision. In 1993, the Ninth Circuit Court of Appeals addressed the argument that is offered by defendants in the instant action, i.e., pawn transactions are sales rather than extensions of credit.[4] *Burnett v. Ala Moana Pawn Shop,* 3 F.3d 1261. Recognizing that TILA "is liberally construed to protect consumers," the *Burnett* court rejected an attempt by the defendant pawnbroker to recharacterize pawn transactions as · sales. *Id.* at 1262. The court reasoned that where a customer "pawns" an item and receives an amount of money in return for the pawned item which is "far less than the property's fair market value," then the customer has a "strong incentive" to "repurchase" the property. *Id.* The court held that "[t]hese factors 'unmistakably mark' the transactions as loans secured by the property, regardless of whether [the consumer] was personally liable for the debt." *Id.* (citing 12 C.F.R. § 226.2(a)(25)).

Additionally, the *Wiley* court recently recognized the "anomalous" results of allowing a state to exempt its pawnbrokers from TILA requirements simply by "legislative fiat." 950 F.Supp. at 1113. Stating that it is "rational to apply TILA uniformly to pawnbrokers in all states," the court reiterated that " '[t]he applicability of TILA ... depends on the words of the statute interpreted in light of the purposes of the act, and not on whether a particular transaction is enforceable under state law.' " *Id.* (quoting *Dryden v. Lou Budke's Arrow Finance Co.,* 630 F.2d 641, 646 (8th Cir.1980)) (citing *Cody v. Community Loan Corp.,* 606 F.2d 499, 505 (5th Cir. 1979) (state law has nothing to do with how transaction is to be· characterized for TILA purposes)).[5]

The court finds the *Burnett* and *Wiley* courts' reasoning sound. Defendants have failed to demonstrate that the updated commentary changes existing law or that the

commentary's interpretation is irrational. Accordingly, the court finds that pawn transactions in Alabama are subject to the requirements of TILA and Regulation Z and defendants' motion for summary judgment in this regard is due to be denied.

### B. Violation of TILA

■ Pursuant to Regulation Z, lenders, or in this case pawnbrokers, are to accurately disclose the following features, *inter alia,* the amount financed, the finance charge, the annual percentage rate of the loan, the total of payments and a payment schedule. 12 C.F.R. § 226.18 (1997). Moreover, the terms *amount financed, finance charge, annual percentage rate,* and *total of payments* must appear on the face of the pawn ticket. 12 C.F.R. § 226.18(b), (d), (e) (1997). Disclosures must be clear and conspicuous, and "[t]he terms *finance charge* and *annual percentage rate* ... shall be more conspicuous than any other disclosure, except the creditor's identity." 12 C.F.R. § 226.17(a)(1), (2) (1997).

■ Barlow moves for summary judgment against the defendants on the issue of liability for violation of the disclosure requirements. She contends that the pawn tickets in question do not disclose the *amount financed,* the *finance charge,* the *total of payments,* or the *annual percentage rate,* using those terms, nor do they contain a separate itemization of the amount financed or a payment schedule describing the number, amounts and timing of payments required to repay the obligation. In response, defendants argue that they do not have to provide a separate itemization for the *amount financed,* and that the pawn tickets in question otherwise comply with TILA requirements. The updated commentary indicates that although normally a lender must also provide an itemization of the amount financed, *see* 12 C.F.R. § 226.18(c)(i–iv) (1997), a "pawnbro-

---

4. The updated commentary makes short shrift of the sale versus credit distinction by stating that TILA disclosures are required when a "consumer *pledges or sells* an item to a pawnbroker creditor in return for a sum of money and retains the right to redeem the item for a greater sum." 12 C.F.R. Pt. 226, Supp. I(C)(18) (emphasis added) (1997).

5. Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

ker creditor need not provide a separate itemization of the amount financed if that entire amount is paid directly to the consumer and the disclosed description of the amount financed is 'the amount of cash given directly to you' or a similar phrase." 12 C.F.R. Pt. 226, Supp. I(C)(18)(i) (1997). Accordingly, the court agrees with defendants that they are not required to provide a separate itemization; however, the court cannot accept defendants' argument that they are otherwise in compliance with the disclosure requirements.

A review of the pawn tickets in the Present matter reveals that defendant EFS, Inc., d/b/a Quik Pawn Shop is in clear violation of the disclosure requirements. Regulation Z requires the pawnbroker creditor to disclose "the *amount financed,* using that term, and a brief description using words such as *the amount of credit provided to you or on your behalf.*" 12 C.F.R. § 226.18(b) (italics in original). Although the pawn tickets state a loan amount,[6] nowhere in the pawn tickets does the term *amount financed* appear nor is there a brief description such as "the amount of credit provided to you on your behalf." Regulation Z also requires the pawnbroker creditor to disclose the *finance charge,* using that term, as well as "a brief description such as *the dollar amount the credit will cost you.*" 12 C.F.R. § 226.18(d) (italics in original). The words finance charge do not appear in the pawn tickets, nor is there the necessary brief description.

As this court has noted once before, "liability flows from even minute deviations from the requirements of the statute and of Regulation Z." *Hyde,* 1994 WL 653504, at *3 (quoting *Charles v. Krauss Co., Ltd.,* 572 F.2d 544, 546 (5th Cir.1978)). The goal of TILA requires that even minor statu-

tory and regulatory strictures be followed by all creditors to the smallest detail. *Pennino v. Morris Kirschman & Co., Inc.,* 526 F.2d 367 (5th Cir.1976). The Eleventh Circuit Court of Appeals has found that a single violation of TILA is sufficient to affix liability. *Jackson v. Columbus Dodge, Inc.,* 676 F.2d 120 (5th Cir.1982). Moreover, "once the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of liability." *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976). Accordingly, the court finds that Barlow is entitled to judgment as a matter of law on the issue of liability.

The court notes, however, that multiple violations in a single transaction do not give rise to additional liability. *Jackson,* 676 F.2d at 121. Thus, one violation carries the same degree of liability as multiple violations in a single transaction. For this reason, the court finds it unnecessary to reach a determination as a matter of law as to Barlow's claims that defendants also violated TILA by failing to disclose the annual percentage rate, a payment schedule or a total of payments.[7]

## C. Liability of Individual Defendants Frank and Charlotte Evans

In their motion for summary judgment, defendants contend that neither Frank nor Charlotte Evans are creditors in a pawn transaction, and, therefore, they cannot be held liable under TILA. Specifically, they contend that this transaction is between Barlow and EFS, Inc., d/b/a Quik Pawn Shop. On the other hand, Barlow argues that the individual defendants are liable because they did not identify themselves as conducting business on behalf of a corporate entity. In support thereof, the defendants ask the court to look to Alabama law which provides that

**6.** In the top right hand corner of each pawn ticket, just below the address of Quik Pawn Shop, the term "Loan Amt:" appears followed by the actual dollar amount of the loan, e.g., "Loan Amt: $500.00."

**7.** Although creditors are also required by Regulation Z to disclose *total of payments,* using that term, and a descriptive explanation such as "the amount you will have paid when you have made all schedule payments," *see* 12 C.F.R. § 226.18(h), such a disclosure is not necessary

where the transaction involves a single payment, *id.,* n. 44. Defendants could conceivably argue they are exempt from the "total of payments" requirement in a pawn transaction, where there is only one required payment. similarly, defendants could argue that a "payment schedule" is inapplicable to the pawn transaction. However, defendants advance neither of these arguments in this action, and, therefore, the court makes no finding in this regard.

persons that conduct business without disclosing that they are acting on behalf of a corporation incur personal liability on the contracts they make. Pl.'s Response to Def.'s Mot. for Summ. J. at 2.

The court's determination of this issue rests initially on whether TILA's definition of "creditor" encompasses the individual defendants. TILA defines "creditor" as:

> a person who both (1) regularly extends ... consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement ...

15 U.S.C. § 1602(f) (1992). In this case, there is no evidence that either Frank or Charlotte Evans led any consumer to believe that the alleged credit transactions were between the consumer and them. The court finds that the transactions at issue were held out as between Quik Pawn and the consumers.

None of the documents evidencing the pawn transactions refers to either Frank or Charlotte Evans. Instead, all the documents contain the name "Quik Pawn Shop." [8] Barlow presents no evidence that at any time during her transactions with Quik Pawn Shop she believed Frank and/or Charlotte Evans to be the owners or agents of Quik Pawn Shop. She only presents copies of the American Business Information Directory which lists Charlotte Evans as the Owner of Quik Pawn Shop located at Norman Bridge Road in Montgomery and Frank Evans as the owner of other pawn shops. The court finds these submissions to be less than probative as there is no indication whatsoever that Charlotte or Frank Evans ever held themselves out as the owners or even agents

of the Quik Pawn Shop during any transaction with Barlow or any other customer. Accordingly, the court finds that Charlotte and Frank Evans do not meet the definition of creditor as articulated by TILA.

■ Barlow is correct that Alabama law holds that "where the agent fails to disclose the fact that he acts for a principal or fails to disclose the identity of his principal, both the agent and the principal may be bound." *Hilburn v. Fletcher Oil Co., Inc.*, 495 So.2d 613, 615 (Ala.1986) (quoting *Davis v. Childers*, 381 So.2d 200, 202 (Ala.Civ.App.1979)). In *Hilburn*, for instance, the defendant, who was the owner of an incorporated towing company, contracted personally with a fuel supplier. The Alabama Supreme Court noted that the owner could have been found to be personally liable if he had failed to disclose that he was acting for a principal and the principal's identity.[9] *Id.* However, application of this principle to the instant action results in finding Quik Pawn, rather than Frank and Charlotte Evans, to be the potentially liable agent of EFS, Inc.

Accordingly, the court finds that Frank and Charlotte Evans are not creditors subject to liability under TILA, and, therefore, that defendants' motion for summary judgment as to Frank and Charlotte Evans' liability for violation of TILA is due to be granted.

### D. Actual Damages

■ Defendants and Barlow both seek summary judgment on the issue of whether the measure of actual damages under TILA includes the value of the pawned item forfeited for nonpayment of the pawn or interest charges. Defendants contend that Barlow is entitled *either* to statutory damages *or* actual damages and that actual damages are the cost of the credit, i.e., the finance charge, and not the value of any nonredeemed property. Barlow, on the other hand, contends that she

---

8. The only name appearing on the pawn tickets, other than that of the pledgor, plaintiff Barbara Barlow, and "Quik Pawn Shop," is that of "Lindy," who is identified on the pawn ticket as an employee of Quik Pawn.

9. Although the Alabama Supreme Court held the owner personally liable for the debt, it did not do

so because he failed to disclose the principal/agent relationship. Instead, the court determined that under a prior agreement, the owner had orally agreed to personally incur the responsibility of paying for deliveries of fuel. *Hilburn*, 495 So.2d at 615–616.

is entitled not only to statutory damages but also to actual damages, i.e., the cost of the credit as well as the value of any nonredeemed property.

Before considering whether actual damages include the value of the nonredeemed property, the court must first determine whether TILA permits a prevailing consumer to recover both actual and statutory damages. TILA, 15 U.S.C. § 1640, specifically provides for the recovery of (1) actual damages, (2) statutory damages, and (3) costs of the action and a reasonable attorney's fee:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of the failure;

(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction, ... except that the liability under this subparagraph shall not be less than 5100 nor greater than 51,000; or

(B) in the case of a class action, such amount as the court may allow, except that as to each member of the class no minimum recovery shall be applicable, and the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same creditor shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the creditor; and

(3) in the case of any successful action to enforce the foregoing liability ..., the costs of the action, together with a reasonable attorney's fee as determined by the court.

Noting the presence of "and" at the end of subsection 2(B), defendants argue that because there is no "and" between subsections (1) and (2), Congress did not intend to provide both actual and statutory damages in the same action. Defendants also argue that to allow a plaintiff to recover both types of damages converts the statute from a remedial statute to a penal statute. The court is unpersuaded by defendants' argument. The absence of "and" between the first two subsections notwithstanding, the court finds that the three subsections articulating the statutory penalty scheme are made conjunctive by the presence of "and" before the last subsection.

Although case law in this area is somewhat sparse, courts have found that both types of damages are available. *See Ransom v. S & S Food Center, Inc., of Florida,* 700 F.2d 670, 677 (11th Cir.1983) (affirming award of actual and statutory damages); *Wiley,* 950 F.Supp. at 1114 ("TILA permits recovery of both actual and statutory, or liquidated, damages."); *Hyde,* 1994 WL 653504, at *3 (awarding actual and statutory damages); *Dryden,* 630 F.2d at 647 ("The statutory damages are explicitly a bonus to the successful TILA plaintiff, designed to encourage private enforcement of the Act, and a penalty against the defendant, designed to deter future violations."); *Franklin v. First Money, Inc.,* 427 F.Supp. 66, 72 (E.D.La.1976) (finding "plaintiff may recover both actual damages and the statutorily fixed civil penalty" and "that the drafters of the [TILA] did not intend that the civil penalty should approximate actual damages"), *aff'd* 599 F.2d 615 (5th Cir.1979). Finally, the court notes that defendants have failed to come forward with any case law or other authority which supports their theory that statutory damages and actual damages are mutually exclusive remedies. Accordingly, the court finds that TILA permits recovery of both actual and statutory damages.

The statute provides for actual damages resulting from a creditor's failure to comply with TILA requirements; however, the statute does not define actual damages nor does it provide a method for calculating these damages. Actual damages have traditionally been viewed as synonymous with compensatory damages, which "are awarded 'in compensation for actual or real loss or injury.'" *Wiley,* 950 F.Supp. at 1114 (quoting Black's Law Dictionary 352 (5th ed.1979)). "Such damages 'make good or replace the loss caused by the wrong or injury.'" *Id.*

■ The great weight of authority indicates, however, that before a plaintiff may recover actual damages, she must establish a causal link between the financing institution's noncompliance and her damages. *See id.* at 1114–17 (citing *Romaker v. Crossland Mortgage Corp.,* 1996 WL 254299 (N.D.Ill. 1996); *Adiel v. Chase Fed. Sav. & Loan,* 630 F.Supp. 131 (S.D.Fla.1986), *aff'd,* 810 F.2d 1051 (11th Cir.1987); *McCoy v. Salem Mortgage Co.,* 74 F.R.D. 8 (E.D.Mich.1976); *Bambilla v. Evanston Nissan, Inc.,* 1996 WL 284954, at *5 (N.D.Ill.1996) (finding that since wrong is failing to disclose, rather than the amount charged, "damages must be limited to those flowing from what was failed to be disclosed")). To establish the necessary causal nexus, then, the plaintiff must demonstrate that she "relied on the inaccurate disclosure and thereby was effectively prevented from obtaining better credit terms elsewhere."[10] *Adiel,* 630 F.Supp. at 133 (quoting *Vickers v. Home Fed. Sav. & Loan Ass'n,* 62 A.D.2d 1171, 404 N.Y.S.2d 201 (N.Y.A.D.1978)); *see also Wiley,* 950 F.Supp. at 1114–17 (providing persuasive analysis of case law requiring detrimental reliance to prove actual damages). Accordingly, the court finds that Barlow may recover for any loss, including the value of any forfeited collateral (less any outstanding principal balance), as long as she establishes a causal link between the financing institution's noncompliance with TILA requirements and her claimed losses.

■ Finally, the court notes that the Eleventh Circuit has stated that class members who "signed contracts which were illegal but upon which they were ostensibly liable" are entitled to "a cash amount that would offset their outstanding obligations which would otherwise remain collectable against

them." *Ransom,* 700 F.2d at 677. In a pawn transaction, the unredeemed collateral is or was collectable against the consumer. In light of *Ransom,* it would logically follow that the consumer would be entitled to an amount to offset her loss of collateral at issue. Furthermore, this issue has already been decided by the court in *Hyde,* where the value of the collateral at issue was found to be part of the plaintiff's actual damages. 1994 WL 653504, *3. Accordingly, the court finds that both Barlow's and defendants' motions for summary judgment on this issue are due to be denied.[11]

## II. Fraudulent Suppression Claim

In addition to her claim against defendants for their violation of TILA, Barlow also brings a state law action claiming fraud by suppression. Specifically, she contends that she was injured due to Quik Pawn's suppression of material facts, i.e., failing to disclose the amount financed, a separate itemization, the finance charge, the annual percentage rate, the total of payments and the schedule of payments. Defendants move for summary judgment on this claim, arguing that Barlow may not base her state common law claim on a duty created by federal law and that TILA preempts this state law claim. Alternatively, defendants argue that no material facts were suppressed because the pawn ticket reflected the amount of the pawn charge, the date of repayment, and the amount of repayment. Finally, defendants argue that they are entitled to summary judgment on this claim because Barlow is unable to show any intent by defendants to deceive her.

■ First, defendants argue that Barlow may not allege the same facts giving rise to her TILA claim to support her suppres-

---

**10.** To be sure, such a showing is difficult at best. But those consumers who are without actual damages or who are unable to demonstrate actual damages may still recover statutory damages. As the district court in *Adiel* observed:

The legislative history of the Act indicates that Congress was aware of the difficulty of establishing that causal link between the financing institution's non-compliance with the Act and the Plaintiffs' purported damages. Courts have not only commented on this obstacle, but have also construed it to be the very impetus

behind the legislative decision to construct a workable scheme of statutory damages.

630 F.Supp. at 134 (noting letter from Vice Chairman of Federal Reserve Board which remarked that "[a]ctual damages for disclosure violations are likely to be nonexistent or extremely difficult to prove, particularly in the class action context.").

**11.** Barlow's motion for summary judgment is denied to the extent that she seeks actual damages without having to demonstrate detrimental reliance.

sion claim. They argue that allowing both claims would allow a double recovery for a single wrong. The court finds, however, that TILA does not preempt Barlow's state claim of fraud. To be held liable for violating TILA, a defendant need only be found to have failed to meet the required disclosure. A viable suppression claim under Alabama law, however, requires much more; plaintiff must demonstrate not just that defendant failed to make the necessary disclosures but also that they were material, that defendants had knowledge of the facts and their materiality, and that plaintiff relied, to her detriment, on the omission of those material facts. *See e.g., Liberty Nat'l Life Ins. Co. v. McAllister,* 675 So.2d 1292 (Ala.1995), *cert. dismissed,* 516 U.S. 1035, 116 S.Ct. 688, 133 L.Ed.2d 593 (1995); *Dodd v. Nelda Stephenson Chevrolet Inc.,* 626 So.2d 1288, 1293 (Ala. 1993); *Brown v. Mendel,* 864 F.Supp. 1138, 1146 (M.D.Ala.1994), *aff'd,* 84 F.3d 393 (11th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 950, 136 L.Ed.2d 838 (1997); *Crowder v. Memory Hill Gardens, Inc.,* 516 So.2d 602, 604 (Ala.1987); Ala.Code § 6–5–102 (1993). Accordingly, the court finds that defendants' failure to comply with TILA requirements and defendants' alleged fraudulent suppression of material facts are not the same claim, but instead they are two separate claims for two alleged wrongs. *See Perry v. Household Retail Servs., Inc.,* 953 F.Supp. 1370, 1377 (M.D.Ala.1996) (DeMent, J.) (allowing claims of violations of TILA to go forward with a state claim of fraudulent suppression) [12]; *see also Monday v. Coast to Coast Wireless Cable,* 1997 WL 114874, at *10 (M.D.Ala. Feb.19, 1997) (Albritton, J.) (noting that "state law claims are not displaced by TILA"); *Standish v. Hub Motor Co.,* 149 Ga.App. 365, 254 S.E.2d 416, 418 (1979) (declaring that consumer had independent right to recover under Georgia Fair Business Practices Act as well as under TILA).

Second, defendants argue that the evidence is undisputed that no material facts were suppressed because the pawn ticket reflected all material facts, i.e., the amount of the pawn charge, the date of repayment, and the amount of repayment. However, as the court previously observed above, TILA was enacted in order to assure a meaningful disclosure of credit terms for the consumer. To this end, Congress and the Federal Reserve Board have created a legal framework which imposes a duty on creditors to make certain disclosures—disclosures meant to enable consumers to make an informed decision about the use of credit. The court has already found that defendants failed to include at least some disclosures as required by TILA. Certainly the fact that TILA and Regulation Z require such disclosures is sufficient to create a jury question as to whether any material facts were suppressed. *See Baker v. Bennett,* 603 So.2d 928, 935 (Ala.1992) (holding that "[t]he question of the existent of a duty to communicate ... is for the jury, which should consider the relationship of the parties, the value of the particular facts suppressed, and the relative knowledge of each party").

Finally, defendants argue that they are entitled to summary judgment on this claim because Barlow has offered no evidence suggesting defendants intended to deceive her.[13] In response, Barlow has stated that defendants' claim of lack of intent or lack of knowledge is "inherently incredible" in light of the fact that they operate in a highly regulated industry. Barlow also argues that it is rarely appropriate to grant summary judgment based on the moving party's lack of intent. Pl.'s Br. at 8.

The court recognizes that "[a] plaintiff attempting to prove fraudulent suppression need not prove an intent to deceive; the

---

**12.** The court's statement in *Perry,* 953 F.Supp. at 1377, that plaintiff could recover the same element of damages only once should not be construed as a finding that a recovery on a TILA claim and a state fraud claim would be a "double recovery." One of the issues in *Perry* was choice of law, i.e., whether the Illinois fraud statute or the Alabama fraud statute should apply. Finding that the two statutes were in accord, the court declined to make a choice-of-law determination,

instead stating that no matter which state's fraud law applied, the plaintiff could recover for fraud only once. *Id.* at 1376–1377.

**13.** To support their claim of lack of intent, defendants have submitted the affidavits of defendants Charlotte and Frank Evans in which they testify they had no intent to deceive Barlow.

plaintiff only has to prove a breach of the defendant's duty to disclose the suppressed facts" in order to trigger liability. *Liberty Nat'l Life Ins. Co.*, 675 So.2d at 1296 (citing *Baker*, 603 So.2d at 935). This principle notwithstanding, the court finds that Barlow has presented sufficient circumstantial evidence, i.e., evidence of a highly regulated industry, to create a jury question as to scienter.

For the reasons described above, the court finds that defendants' motion for summary judgment as to Barlow's fraudulent suppression claim is due to be denied.

## CONCLUSION

■ Based on the foregoing, the court finds that defendants' motion for summary judgment is due to be granted in part and denied in part and plaintiff's motion for partial summary judgment is also due to be granted in part and denied in part. To the extent there is a pending motion for class certification, filed October 17, 1994, the court also finds that its determination on the parties' cross-motions for summary judgment is binding on any future class.[14]

Accordingly, it is CONSIDERED and ORDERED that plaintiff's motion for partial summary judgment against defendant EFS, Inc., d/b/a Quik Pawn Shop on the issue of liability for violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Federal Reserve Board Regulation Z be and the same is hereby GRANTED.

It is further CONSIDERED and ORDERED that plaintiff's motion for partial summary judgment holding the measure of actual damages under the Truth in Lending Act includes the value of the pawned item forfeited for nonpayment of the pawn or interest charges be and the same is hereby DENIED.

It is further CONSIDERED and ORDERED that defendants' motion for summary judgment as to individual defendants Frank and Charlotte Evans' liability for violation of the Truth in Lending Act be and the same is hereby GRANTED and that the remainder of defendants' motion for summary judgment be and the same is hereby DENIED.

14. Some courts have construed *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) as prohibiting class certification after a decision on the merits of a case. *See, e.g., Cruz v. Hauck*, 627 F.2d 710, 715 (5th Cir. 1980); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 273–75 (10th Cir.1977); *Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 352–54 (7th Cir.1975). Such a construction is consistent with the 1966 Federal Rules of Civil Procedure Advisory Committee's "concern about allowing potential class plaintiffs to choose whether to join an action after the merits have been decided, since they can opt to be bound by the judgment if it is favorable to the class, or not to be bound if the plaintiffs have lost." *Postow v. OBA Federal Sav. & Loan Assoc.*, 627 F.2d 1370, 1381 (D.C.Cir.1980).

Other courts, however, have "expressly held that a defendant may waive the protections [offered by] Rule 23(c) ... and elect to have the merits decided before the class certification question ... when, as here, the defendant moves for summary judgment before resolution of the certification issue." *Id.; see also Haas v. Pittsburgh Nat'l Bank*, 381 F.Supp. 801 (W.D.Pa.1974), *rev'd*

*on other grounds*, 526 F.2d 1083 (3d Cir.1975); *Wooten v. Hamilton County*, 94 F.R.D. 176 (S.D.Ohio 1982). In *Haas*, the court pointed out that by moving for summary judgment prior to class certification, the defendants

> assume[d] the risk that a judgment in their favor will not protect them from subsequent suits by other potential classmembers, for only the slender reed of stare decisis stands between them and the prospective onrush of litigants. Certainly a judgment for the plaintiff would subject [the defendants] to unfortunate consequences as to the liability phase of the case, but assuming that the judgment was correctly granted, this would seemingly not change their initial willingness to be bound. On the other hand, a correctly granted judgment for the defendant[s] would protect both the parties and the court from needless and costly further litigation.

381 F.Supp. at 806. The court finds this line of reasoning persuasive and that the parties, by the act of filing their summary judgment motions, have effectively waived any objections to the court deciding their cross-motions for summary judgment prior to taking up plaintiff's motion for class certification.